(No. 75313

THE PEOPLE *ex rel.* CARL R. HANSEN *et al.*, Appellants, v. RICHARD J. PHELAN *et al.*, Appellees.

*Opinion filed March 24, 1994.*

446

James A. Davids, David A. Shaneyfelt and Bruce J. Van Heukelem, of Hoogendoorn, Talbot, Davids, God-

frey & Milligan, and Joseph A. Morris, of Morris, Rath-
nau & DeLarosa, all of Chicago, for appellants.

Susan Getzendanner, Special Assistant State's
Attorney, of Chicago (Joseph L. Fogel, Kimberley K.
Baer and Martha J. Burns, of counsel), for appellees.

Colleen K. Connell, Susan Wishnick and Susan Shul-
man, of Chicago, for *amici curiae* Jane Doe *et al.*

CHIEF JUSTICE BILANDIC delivered the opinion
of the court:

Plaintiffs, Carl Hansen, Mary MacDonald, Herbert
Schumann, Jr., and Richard Siebel are 4 of 17 elected
members of the board of commissioners of Cook County
(board). Defendant, Richard Phelan, is the elected presi-
dent and an elected member of the board. Cook County
Hospital (hospital), located in the city of Chicago, is
under the direct control of the board. Defendant, Ruth
Rothstein, is the director of the hospital.

In accordance with the recommendations of a task
force report, President Phelan issued Executive Order
92—1 (Order 92—1) on June 18, 1992. Order 92—1
directed the hospital director, defendant Rothstein, to
reinstate the "Voluntary Interruption of Pregnancy
Program" (abortion program) at the hospital. Prior to
the date that Order 92—1 was to take effect (42 days af-
ter its June 18, 1992, issue date), the plaintiffs requested
the State's Attorney and the Attorney General to file an
action in *quo warranto* against the defendants in order
to challenge President Phelan's authority to issue Order
92—1. Both the State's Attorney and the Attorney Gen-
eral declined to do so. Thereafter, the plaintiffs, as
taxpayers and elected members of the board, petitioned
the circuit court for leave to file, on their own relation,
an action sounding in *quo warranto* against the defen-
dants. In their complaint, plaintiffs alleged that, by

issuing Order 92—1, the president had unlawfully usurped the power and authority of the board and its individual members. The circuit court, in its discretion, granted plaintiffs' petition and allowed plaintiffs to file the present *quo warranto* action.

During the underlying *quo warranto* action, prior to the expiration of a previously issued temporary restraining order (TRO), plaintiffs petitioned the circuit court for a preliminary injunction to enjoin the defendants from carrying out Order 92—1 and reinstating the abortion program at the hospital. Following a lengthy hearing on the petition for injunctive relief, the circuit court denied plaintiffs' petition for a preliminary injunction, finding that plaintiffs have failed to prove a likelihood of success on the merits. In so holding, the circuit court determined that the board had not previously set any binding policy against the elective abortion program at the hospital and that, in the absence of board policy against the program, the president had executive authority to issue Order 92—1 and reinstate the program. The circuit court then dissolved the TRO. The plaintiffs appealed the circuit court's denial of their petition for a preliminary injunction and the dissolution of the TRO (134 Ill. 2d R. 307(a)(1)). A divided appellate court affirmed the circuit court. (*People ex rel. Hansen v. Phelan* (1993), 255 Ill. App. 3d 113.) We granted the plaintiffs' petition for leave to appeal (134 Ill. 2d R. 315).

*Quo warranto* is an extraordinary remedy. (See *People ex rel. Goldberg v. Delaney* (1968), 39 Ill. 2d 474, 478.) *Quo warranto* was originally a writ of right for the crown against one who claimed or usurped any office, franchise or liberty, to challenge by what authority he asserted a right thereto. (*People ex rel. Ray v. Lewistown Community High School District No. 241* (1944), 388 Ill. 78, 82-83.) The writ of *quo warranto* is a high prerogative writ and originally could be availed of only by the

sovereign. (*People ex rel. Weber v. Burson* (1923), 307 Ill. 533, 535.) For private individuals, *quo warranto* is not a writ of right. *Burson*, 307 Ill. at 536.

These principles regarding *quo warranto* were codified and remain substantially the same (*City of Highwood v. Obenberger* (1992), 238 Ill. App. 3d 1066, 1079), although the statute allows private parties to bring the action under special circumstances (see Ill. Rev. Stat. 1991, ch. 110, par. 18—102). Currently, individuals may bring an action in *quo warranto* only by leave of court. Ill. Rev. Stat. 1991, ch. 110, par. 18—102.

The decision to grant or deny a petition for leave to file a *quo warranto* action is a matter within the trial court's sound discretion. (*People ex rel. Prather v. Miller* (1928), 331 Ill. 395, 399.) In the exercise of its discretion, the court should consider all of the conditions and circumstances in the case, the motives of the relators in instituting the proceedings, the policy of and necessity for the remedy sought, and whether the public interest will be served or damaged by the writ. (*Miller*, 331 Ill. at 399; *Burson*, 307 Ill. at 536.) An unreasonable delay or acquiescence on the part of the complaining parties, as well as a consideration of the public interest or convenience, are sufficient grounds to justify the circuit court's refusal to grant leave to file a *quo warranto* action. (*Miller*, 331 Ill. at 399; *People ex rel. Eicholtz v. Stewart* (1923), 306 Ill. 470, 472.) The court's grant of leave to file a *quo warranto* action will be reversed if the reviewing court finds that the lower court has abused its discretion. See *People ex rel. Tilton v. Mackey* (1912), 255 Ill. 144, 160; *People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 93.

The parties have not addressed or briefed any issue concerning the circuit court's grant of leave to file the instant *quo warranto* action. We, however, raise this

issue *sua sponte,* as it concerns this court's subject matter jurisdiction. See *Michelson v. Industrial Comm'n* (1941), 375 Ill. 462, 469-70; *Town of Kingston v. Anderson* (1921), 300 Ill. 577, 582-83.

In March 1992, approximately three months before President Phelan had issued Order 92—1 and four months before its effective date, Resolution No. 172710 was introduced and referred to the health and hospitals committee (later renamed the public service committee) of the board. This resolution, introduced by Commissioners Bernidini and Steele, provided for the establishment of an elective abortion program at the hospital.

The rules of order adopted by the board provide that any member of the board, when a committee fails to act on a resolution, may move for the discharge of the committee from further consideration of the resolution and for the resolution to be called up for immediate consideration by the full board.

From March 1992 up to the present time, the plaintiffs did not exercise their legislative right and obligation to call the resolution for immediate consideration by the full board. Additionally, the plaintiffs could have introduced their own resolution or offered a substitute for Resolution No. 172710. The board is a legislative body where county legislative matters are considered, debated and resolved. Instead of following any of the alternatives set forth above, plaintiffs abdicated their legislative obligations and asked the courts to exercise their legislative functions for them.

The parties have stipulated that if the board wishes to set a hospital policy regarding an abortion program, whether pro or con, it has the power and authority to do so. Merely by addressing itself to the matter and fulfilling its legislative function, the board could resolve the present dispute of its own accord. The board, as the legislative body, could pass a resolution either for or

against the abortion program, thereby ratifying or invalidating Order 92—1.

Plaintiffs, however, have asked this court to interject itself into the legislative process, a request which a court may not fulfill. Violation of separation of powers principles would severely damage the public interest and would establish bad judicial policy. As this court has previously stated:

> "By [the Illinois Constitution] the powers of the government of this State are divided into three distinct departments,—the legislative, executive and judicial,— and no person or collection of persons, being one of these departments, may exercise any power properly belonging to either of the others, except as expressly directed or permitted by the constitution. Neither of these three departments is subordinate to or may exercise any control over another except as is provided by the constitution. Their status is that of equality, each acting within its own sphere independent of each of the others, so long as its action does not exceed the powers confided to it, unless particular exceptions are made to this general rule by the constitution itself. [Citation.] The *legislative department determines what the law shall be*, the executive department executes or administers the law, and the *judicial department construes and applies the law.* Neither one of these departments can arrogate to itself any control over either one of the other departments in matters which have been solely confided by the constitution to such other department. *The power to enact statutes is, clearly, solely a legislative power confided by the constitution to the legislature. The power to construe statutes is confided to the judiciary.*" (Emphasis added.) *(Fergus v. Marks* (1926), 321 Ill. 510, 513-14.)

Although *Fergus v. Marks* was decided under the 1870 Constitution, these principles were substantially incorporated into the Illinois Constitution of 1970. See Ill. Const. 1970, art. II, § 1.

In keeping with our constitutional mandate, the judiciary will not arrogate to ourselves the legislative

function. Legislative disputes must be resolved in the legislative arena. Legal disputes shall be resolved in the legal arena. This case presents a legislative dispute.

As stated, *quo warranto* is an extraordinary remedy. (See *People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 578.) In determining whether to grant leave to file an action sounding in *quo warranto*, the court is required to consider all of the facts and circumstances of the case. (*People ex rel. Lindsey v. Board of Education of Community Unit School District No. 4* (1954), 3 Ill. 2d 159, 166-67.) Among the factors that the court must consider are the necessity for the remedy of a writ of *quo warranto* as well as the plaintiffs' motives in bringing the petition to file a *quo warranto* action. Plaintiffs, as legislators, have the opportunity and means necessary to resolve this dispute within the legislative body to which they have been elected. As such, there is no necessity for the issuance of a writ of *quo warranto*. Therefore, plaintiffs' motives in bringing this action could only be to avoid exercising their legislative powers and fulfilling their legislative duties. Because the public interest could never be served by allowing legislators to run to court and, thereby, avoid their legislative responsibility to the public, we hold that the circuit court abused its discretion in allowing plaintiffs leave to file the present action. In addition, we note that one who had no right to bring a *quo warranto* action initially has no right to prosecute an appeal therefrom. *Adair v. Williams* (1950), 407 Ill. 309, 313, *overruled on other grounds sub nom. People ex rel. McCarthy v. Firek* (1955), 5 Ill. 2d 317, 325.

Accordingly, the appellate and circuit courts' judgments are vacated and the appeal is dismissed.

*Judgments vacated;*
*appeal dismissed.*