ROSEHILL CEMETERY COMPANY

*v.*

MARY HOPKINSON, EXR'X.

*Filed at Ottawa May 15, 1885.*

1. CEMETERY COMPANIES—*corporate powers—to make by-laws, rules and regulations—uniformity of application required.* Where the charter incorporating a cemetery company provides for a board of managers, who are authorized to lay off the grounds into lots, sell the same, make by-laws, and such rules and regulations for the government of lot owners and visitors as they may deem necessary, they may make such rules and regulations; but they must be reasonable, equal in their operation, and uniform in their application to all owners of lots in the cemetery. The managers will have no right to make a rule which will confer a right upon one owner in regard to the improvement of his lot, and deny the same right to another lot owner.

2. Such a company being a *quasi* public corporation, and possessed of the right to condemn property, and invested with other important powers, is bound to exercise its rights and privileges fairly and impartially; and if, through its officers, it attempts to act arbitrarily, or to transcend its powers to the injury of a lot owner, such action may be reviewed and controlled by the courts.

3. SAME—*erecting a vault upon a cemetery lot—rights of the owner— of rules in restriction thereof.* If the board of managers of a public cemetery company incorporated by law, have authority, under their charter, to prevent a lot owner from erecting a vault upon his lot, that power can only be exercised by the adoption of a general rule on the subject applicable to every one.

4. A rule adopted by the board of managers of an incorporated cemetery company, that "no vault shall be built entirely or partially above ground without permission of the company," taken in connection with another that no vault shall be constructed in the cemetery until the designs and specifications of the same, with a diagram of location, shall have been submitted and approved by the board, can not be regarded as prohibiting the erection of a vault; and in the absence of a rule prohibiting such erection as to all persons, the board of managers have no power to establish a rule governing a particular case.

5. In this case the company had no rule prohibiting the erection of vaults within the cemetery, but was acting under a rule requiring designs, specifications and a diagram to be submitted. This was fully complied with by the owner, who proposed to erect a vault upon his lot, and no objection was made as to the design and specifications, and the question of granting leave to erect

14—114 ILL.

the vault was left to the decision of the landscape gardener, who decided to grant the permission, and the owner then made a contract for the building of the vault, and the contractor proceeded with the work until prevented by the officers and agents of the company. It also appeared that many vaults had been allowed to be built in the cemetery: *Held*, that the court properly granted a decree, at the instance of the lot owner, enjoining the company from interfering with the work or preventing the erection of the vault.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

Messrs. Bentley & Bentley, for the appellant:

The right of complainant to build a vault upon her lots in the cemetery of the defendant company, the company objecting thereto, depends primarily upon her title to the lots. Every deed of conveyance, whether for a pew, or vault, or house, is a contract between the parties, to be interpreted according to its actual, or fairly to be presumed, intent. *Richards* v. *Protestant Dutch Church*, 32 Barb. 45.

A deed of conveyance of a cemetery lot, though absolute in terms, conveys no right, *per se*, to build a vault upon it. The title to cemetery lots is analogous to that of pew-holders in a house of worship, which is subject to the right of the corporation owning the house to make such rules and regulations governing the pew-holders, generally, as it may see fit. *Buffalo Cemetery* v. *City of Buffalo*, 46 N. Y. 503; *Voorhees* v. *Presbyterian Church*, 8 Barb. 135; *Cooper* v. *First Presbyterian Church*, 32 id. 222; *Richards* v. *Protestant Dutch Church*, 32 id. 45; *Kincaid's case*, 66 Pa. St. 411; *Gay* v. *Baker*, 17 Mass. 435; *Daniel* v. *Wood*, 1 Pick. 102; *Sohier* v. *Trinity Church*, 109 Mass. 1; *Mt. Moriah Cemetery* v. *Commonwealth*, 81 Pa. St. 235.

Where there is no reasonable presumption of authority, and no actual authority given to an agent, the corporation should not be prejudiced by his unauthorized acts. *Castar* v. *Titusville Gas Co.* 63 Pa. St. 38; *Bank of United States* v.

*Dun,* 6 Pet. 51; *Bank of Metropolis* v. *Jones,* 8 id. 12; *Stewart* v. *Huntington,* 11 S. & R. 267.

The affairs of a corporate body can be transacted only at a corporate meeting. *Schumm* v. *Seymour,* 24 N. J. Eq. 153; *Cammemeyer* v. *Lutheran Church,* 2 Sandf. Ch. 254; *Dennison* v. *Austin,* 15 Wis. 334.

If the agreement is made outside of the meeting, it is not good. *Railroad Co.* v. *Reeve,* 15 Md. 240.

Mr. J. Blackburn Jones, and Mr. Robert H. McMurdy, for the appellee:

The cemetery company, being a *quasi* public corporation, must exercise its powers fairly, reasonably and impartially. *Village of Glencoe* v. *People,* 78 Ill. 389; *Zanone* v. *Mound City,* 103 id. 566; *Chicago* v. *Rumpff,* 45 id. 97; *Trustees* v. *Walsh,* 57 id. 366; *Railroad Co.* v. *People ex rel.* 67 id. 14; *Richards* v. *Protestant Dutch Church,* 32 Barb. 44; *Vincent* v. *Railroad Co.* 49 Ill. 33; *Happy* v. *Morton,* 33 id. 40; Tapping on Mandamus, (Am. ed.) 66; *Green* v. *Green,* 34 Ill. 320.

The doctrine of all the foregoing cases is, that where a discretion is abused, and works injustice, it is admissible that it shall be controlled by *mandamus.*

The deed for these lots conveyed the title, subject only to reasonable rules and regulations of the company. *Commonwealth* v. *Mt. Moriah Cemetery,* 10 Phil. 385.

The presumption is, that acts which an officer of a corporation usually and customarily performs in behalf of his company, are authorized by the directors. *Elwell* v. *Dodge,* 33 Barb. 339; *Beers* v. *Phœnix Glass Co.* 14 id. 368; *Flickner* v. *Bank of United States,* 8 Wheat. 338; *Smith* v. *Hull Glass Co.* 9 Eng. L. & Eq. 446; *Bissell* v. *Railroad Co.* 22 N. Y. 259; Story on Agency, (7th ed.) sec. 52; Green's Brice's Ultra Vires, 506, note a; *Commercial* v. *Union,* 19 Horr. 318; *Flagely* v. *Hubbard,* 22 Cal. 35; Potter on Corp. sec. 131, page 183.

It is also presumed that directors. are acting lawfully in what they do. *Knox* v. *Aspinwall*, 21 How. 539; *Zabriskie* v. *Clearland*, 33 id. 381; *De Voss* v. *Richmond*, 18 Gratt. 338.

Corporations are bound by the acts of their agents within the scope of the agents' authority. Angell & Ames on Corp. sec. 297; *Bissell* v. *Railroad Co.* 22 N. Y. 300; *State* v. *Commercial*, 8 S. & M. 233.

Directors of a corporation are themselves its agents. Potter on Corp. sec. 131; Field on Corp. sec. 173; Angell & Ames on Corp. sec. 299.

The owner of a lot in a church close has merely a usufructuary interest. The church or society, by a mere majority vote, may change the burial ground from one place to another, or may discontinue it altogether; but the owner of a lot who acquired by deed from a private corporation, holds the fee simple, subject only to the rules of the company. *Commonwealth* v. *Mt. Moriah Cemetery*, 10 Phil. 387; *Richards* v. *Protestant Dutch Church*, 32 Barb. 44; *Matter of Reformed Church*, 7 How. 478.

Mr. Justice Craig delivered the opinion of the Court:

Mary Hopkinson, executrix of the estate of her deceased husband, Charles Hopkinson, was proceeding to erect a vault on lots 135 and 136, in section "D," in Rosehill cemetery, which had been purchased by her husband on the 5th day of September, 1863, when she was prevented by the officers and agents of Rosehill Cemetery Company. Being unable to proceed with the work, she filed her bill of complaint in the Superior Court of Cook county, in which she prayed for an injunction restraining the Rosehill Cemetery Company and its agents and officers from interfering with or hindering complainant and her employes in the erection of the vault upon her said lots, and from injuring or interfering with it after it shall have been erected. The defendant put in an answer to

the bill, and upon the hearing, on the pleadings and the evidence, the court rendered a decree as prayed for in the bill, which was affirmed in the Appellate Court.

The appellant was incorporated under an act entitled "An act to incorporate the Rosehill Cemetery Company," approved February 11, 1859. Afterwards, and on February 13, 1863, the legislature amended the act, and under the original and amended acts the company has, since its incorporation, transacted business in Cook county. Under the power contained in the act the company purchased land, laid out the cemetery, and sold lots for burial purposes. The act of incorporation provides for a board of managers, who are authorized to lay off the grounds into lots, sell the same, make by-laws, and make such rules and regulations for the government of the lot-holders and visitors to the cemetery as they may deem necessary. Among the rules adopted by the company was the following: "No vault or tomb shall be constructed in the cemetery until the designs of the same accompanying the specifications, and a diagram of location, shall have been submitted to the board of managers, and approved by them."

The deed conveying the property to Hopkinson contained the following provision: "Subject, however, to the provisions and restrictions of an act of the General Assembly of the State of Illinois, entitled 'An act to incorporate the Rosehill Cemetery Company, approved February 11, 1859,' (and all amendments that may hereafter be made thereto.) And also subject to the conditions and limitations, and with the privileges and restrictions, specified in the rules and regulations hereto annexed, and which are made a part of the conveyance, or which the said company may hereafter make in accordance with said act, or with any amendment which may hereafter be made thereto."

One of the rules annexed to the deed was as follows: "The proprietor of each lot shall have the right to erect any proper stone or monument or sepulchral structures thereon, except

that no vault shall be built entirely or partially above ground without permission of the company, and no monument and no portion of vaults above ground shall be of other material than cut stone, granite or marble, without the consent of the company."

So far as the plan of the vault is concerned, that does not appear to be objectionable. This is apparent from the answer to the bill, which, upon that point, is as follows: "Defendant states that its board of managers did not object to the plans and specifications of said vault, but to the location of the same; that the lot upon which it is sought to place said vault is almost directly opposite, and within sight of, the gate of said cemetery, and would obstruct the view from said entrance, and disfigure the grounds of said cemetery."

From this statement in the answer, and from the evidence introduced on the hearing, the question arises whether the managers of the cemetery have the right or power to prevent the complainant from the erection of any vault upon her property which was purchased for burial purposes. There is no doubt but the managers of the incorporation may, under the powers conferred by the charter, make reasonable and salutary rules for the management of the cemetery, and for the government of all lot-holders; but such rules must be reasonable, equal in their operation, and uniform in their application to all lot owners in the cemetery. A rule which would confer a right upon one lot owner in regard to the improvement of his property, and deny the same right to another lot owner, the managers of the cemetery have no power to make or enforce. The Rosehill Cemetery Company is a *quasi* public corporation, with power, under the law of eminent domain, to condemn property for its use. Being possessed of this and other powers of an important character, the trustees are bound to exercise their rights and privileges fairly and impartially; and if they undertake to act arbitrarily, or transcend their powers to the injury of a

lot owner, their action may be reviewed and controlled. In *City of Chicago* v. *Turner*, 45 Ill. 90, it was held that corporate franchises, whether municipal or private, are conferred in trust for the benefit of the entire corporators, and, like all other trusts, must be exercised with prudence and discretion. In the same case it was also held that by-laws of a corporation must be reasonable, and such as are vexatious, unequal or offensive, are void. Upon an examination of the evidence introduced on the trial, it will be found that vaults have been erected by lot owners in the cemetery from the time it was organized down to the present date, with the knowledge and sanction of the managers, and, so far as appears, this is the first instance in which they have denied a lot owner the right. As the right of a lot owner to erect a vault has been uniformly allowed by the managers of the corporation, they have no power, in this instance, to arbitrarily deny the same right to the complainant. In the improvement and enjoyment of her property she is entitled to the same rights and privileges accorded to all others. If the board have authority, under the charter, to prevent a lot owner from erecting a vault upon his lot, that power can only be exercised by the adoption of a general rule on the subject which will be applicable to every one. That has not been done. The deed passed the title in fee simple to the complainant, for burial purposes, on certain conditions annexed to the instrument, one of which was that "no vault shall be built entirely or partially above ground without permission of the company." The permission alluded to in this condition, under the rules adopted, will not be granted until designs, specifications and a diagram of location shall have been submitted and approved by the board of managers. This can not be regarded as a rule prohibiting the erection of a vault, nor do we find any rule adopted by the managers which prohibits a lot owner from erecting a vault on his property. A regulation requiring plans and specifications to be submitted to the board of managers for approval, is entirely

a different thing from a rule prohibiting the erection of a vault. As said before, in the absence of a general rule prohibiting the erection of vaults by all, the board of managers had no power to establish a rule which would govern this particular case.

The rule under which the board of managers were acting, requiring designs, specifications and a diagram, was fully complied with by the complainant. She called at the office of the company for the purpose of presenting her plans. The secretary referred her to Van H. Higgins as the proper officer. He was treasurer, and owner of a majority of the stock of the company. After several interviews, a time was agreed upon to go to the cemetery. Higgins and one or two of the members of the board, and the landscape gardener, (Cleveland,) met the complainant at the cemetery, and, as proven by a number of witnesses, the matter as to the erection of a vault by complainant was submitted to Cleveland, with the understanding that his decision should be final and conclusive. An examination was made, and Cleveland decided that the erection of a vault on the premises as proposed was unobjectionable, when Van H. Higgins informed complainant, as shown by several witnesses, that that ended the matter, and immediately thereafter she went on and made a contract for the erection of the vault, and the contractors proceeded with the work.

As has been heretofore stated, no objection has ever been made to the plans on which the vault was proposed to be erected, but it is pretended, in the answer, that the lots upon which the vault is proposed to be built are nearly opposite to the main entrance, and if erected there, many fine views will be obstructed. This objection, as shown by the preponderance of evidence, is devoid of merit. Anderson, Bauslin, Cooper, Cleveland, Liversy, complainant, and her daughter, all testify that the place where it is proposed to erect the vault is more than two hundred feet north of the main en-

trance, and back such a distance, if erected as proposed, that it could not be seen from the main entrance when leaves are on the trees.

After a careful consideration of the whole record, we are satisfied that the decree of the Superior Court was correct. The decision of the Appellate Court will be affirmed.

*Decree affirmed.*